**Roosevelt SIMMONS, Ronald Haynes, Sheila Haynes, Joseph Smith and Raymond Stephens, Plaintiffs,**

v.

**Jack KEMP, in his official capacity as Secretary of the United States Department of Housing and Urban Development, Cora McCorvey, in her official capacity as Executive Director of the Minneapolis Public Housing Authority, and The Minneapolis Public Housing Authority, Defendants.**

Civ. 4–90–562.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 3, 1990.

Lawrence McDonough, Timothy Thompson, Legal Aid Soc. of Minneapolis, Minneapolis, Minn., for plaintiffs.

Jerome G. Arnold, U.S. Atty., and Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., Arthur R. Goldberg, Dept. of Justice, Civ. Div., Owen B. Cooper, Dept. of Justice, Civ. Div., Washington, D.C., for defendant Kemp.

Fred Burstein, Dylan J. McFarland, Fred Burstein & Associates, P.A., Minneapolis, Minn., for defendants McCorvey and Minneapolis Public Housing Authority.

## MEMORANDUM AND ORDER

MacLAUGHLIN, Judge.

### BACKGROUND

The plaintiffs are low income individuals who reside in federally-funded public housing.[1] Defendant Jack Kemp is the Secretary for Housing and Urban Development for the United States. Defendant Cora McCorvey is the executive director of the Minneapolis Public Housing Authority. Defendant Minneapolis Public Housing Authority is a designated public housing authority (PHA) that provides low income public housing in the City of Minneapolis.

The relevant facts in this case are not disputed. The plaintiffs all face eviction from public housing operated by the Minneapolis Public Housing Authority. The PHA operates its facilities in cooperation with the federal Department of Housing and Urban Development. Federal law requires PHAs to provide due process in eviction proceedings. Thus, PHAs must provide administrative hearings before instituting court eviction proceedings. The relevant statute is 42 U.S.C. § 1437d(k) which provides:

> The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will:
>
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
>
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (1) of this section;
>
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
>
> (4) be entitled to. be represented by another person of their choice at any hearing;
>
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
>
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.
>
> An agency may exclude from its procedure any grievance concerning an eviction or termination of tenancy in any jurisdiction which requires that, prior to eviction, a tenant be given a hearing in court which the Secretary determines provides the basic elements of due process.

---

1. Plaintiff Raymond Stephens, by notice dated September 4, 1990, has withdrawn from this action because the Minneapolis Public Housing Authority has ceased their eviction proceedings against him.

Congress passed 42. U.S.C. § 1437d(k) in 1983. Prior to this time, HUD had a regulatory scheme of due process for PHA tenants. This regulatory scheme was promulgated on August 7, 1975. 40 Fed.Reg. 33,406. After Congress passed the 1983 statutory mandate, HUD promulgated new regulations. 53 Fed.Reg. 33,216 (Aug. 30, 1988).

These new regulations were challenged by public housing tenants. In January of 1989, the United States District Court for the District of Columbia enjoined HUD from implementing the regulations. *National Tenants Organization v. Kemp*, No. 88–3134 TPJ (D.D.C. Jan. 25, 1989). HUD withdrew the regulations and announced that the original grievance regulations would remain in effect. 54 Fed.Reg. 6,886 (Feb. 15, 1989).

These HUD regulations are now codified at 24 C.F.R. § 966, *et seq.*, and state:

> The purpose of this subpart is to set forth the requirements, standards and criteria for a grievance procedure to be established and implemented by public housing agencies (PHAs) to assure that PHA tenants are afforded an opportunity for a hearing if the tenant disputes within a reasonable time any PHA action or failure to act involving the tenant's lease with the PHA or PHA regulations which adversely affect the individual tenant's rights, duties, welfare or status.

24 C.F.R. § 966.50.

The regulations further define due process as:

> (1) Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;
>
> (2) Opportunity for the tenant to examine all relevant documents, records and regulations of the PHA prior to the

trial for the purpose of preparing a defense;

> (3) Right of the tenant to be represented by counsel;
>
> (4) Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have;
>
> (5) A decision on the merits.

24 C.F.R. § 966.53(c).

The grievance statute (set forth above) allows the Secretary to waive the administrative grievance procedure, when the Secretary finds that state court eviction processes provide the five basic elements of due process (provided in the regulations). The Secretary's waiver allows PHAs to evict a tenant through state court eviction proceedings. On May 16, 1989, HUD began a review of state court procedures to determine if they fulfilled the basic elements of due process. Congress, on June 23, 1989, passed legislation which restricted the ability of the Secretary to waive the administrative hearing in eviction proceedings.[2] Dire Emergency Supplemental Appropriations and Transfers, Urgent Supplementals, and Correcting Enrollment Errors Act of 1989; P.L. No. 101–45, Title IV § 404, 103 Stat. 97,128–9 (1989). The President signed the bill on June 30, 1989. This legislation caused HUD to speed up the process of reviewing statutory eviction procedures.

Once HUD became aware that Congress had passed this provision, it radically altered its process for making the due process determinations to get as many as possible completed before the President signed the bill. Between June 28, [1989,] when it filed its five waivers with the Court of Appeals and, apparently June 30, [1989,] in the late afternoon

---

**2.** The legislation required HUD to make due process determinations for all states within six months, required Secretary Kemp to grant affected tenants notice and an opportunity to comment before making his determination, allowed PHA's only to exclude evictions involving drug-related criminal activity which threatened the health and safety of others, and limited evictions to those who were involved in that activity, not other innocent family members. Conf.Rep. on H.R. 2072, 135 Cong.Rec.H. 2819, 2831–32 (June 16, 1989). This provision was later abrogated by subsequent congressional action. Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1990, Pub.L.No. 101–144, Title II, 103 Stat. 839, 853 (Nov. 9, 1989).

when the President signed the legislation, Secretary Kemp issued waivers for an additional 19 states and a revised waiver for the District of Columbia. Castro, *The Exclusion of Evictions from the Public Grievance Process*, 19 Housing Law Bull. 1, 45–46. On June 29, 1989, the Secretary found Minnesota to be in compliance and waived the administrative hearing procedure for Minnesota PHAs, which use the judicial eviction process of unlawful detainer.

The plaintiffs' complaint raises two issues. First, the plaintiffs claim they have been denied regulatory due process because there is no guarantee that discovery is available in Minnesota court eviction proceedings. This is a claim based solely on HUD's regulatory definition of due process. Second, the plaintiffs argue that tenants of PHAs were denied notice of the change in HUD policy.[3] Plaintiffs' eviction proceedings have been stayed pending the outcome of this due process claim.

Defendant HUD denies that discovery is not available to tenants in Minnesota court eviction proceedings. HUD has stipulated that the only mode of court ordered eviction that will be used, in lieu of a prior administrative hearing, is eviction by "unlawful detainer". HUD claims that discovery proceedings are available, so that tenants can review all their files and records. Defendant MPHA denies that the plaintiff was due any notice of the waiver of the right of an administrative hearing because it alleges that its eviction policy has not changed.

DISCUSSION

I. *Summary Judgment*

Both parties have filed motions for summary judgment. A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). The parties agree that there are no material factual issues in dispute. Accordingly, the Court will review the record and grant plaintiffs' motion for summary judgment.

The parties agree on the appropriate standard of review in a case where Congress has delegated decision-making power to an agency head. The Administrative Procedure Act provides that agency actions may be set aside if the challenged action is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). *See Motor Vehicle Manufacturer's Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

Plaintiffs argue that the Secretary improperly found that due process was available to tenants facing eviction in the Minnesota court system.

The issue before the Court is whether "unlawful detainer" eviction proceedings provide adequate opportunity for discovery for PHA tenants.

A. Adequacy of Discovery Under Rule 34

Plaintiffs argue that tenants must have the opportunity to discover all relevant documents, records and regulations from the PHA prior to trial. 24 C.F.R. § 966.53(c). Plaintiffs claim that rule 34, which is the Minnesota rule governing discovery, provides too much time to meet the due process standard because it allows up to thirty days for discovery.[4] The plaintiffs contend that unlawful detainer proceedings can be completed within seven days, Minn.Stat. § 566.06,[5] and that therefore, there is no

3. Federal rules require PHAs to notify tenants of changes in the grievance procedures. 24 C.F.R. §§ 966.5, 966.4(m), (n).

4. Rule 34 states in part:
 The request [for discovery] may, without leave of court, be served upon any party with or after service of the summons and complaint.... The party upon whom the request is served shall serve a written response within 30 days after the service of the request, except that a defendant may serve a response within 45 days after service of the summons and complaint upon that defendant. The court may allow a shorter or longer time.
 Minn.R.Civ.P. 34.02.

5. Minn.Stat. § 566.06 provides:
 The summons shall be served at least seven days before the return day in the manner provided for service of a summons in a civil action in the district court. If the person cannot be found in the county, the summons may be served at least seven days before its

guarantee that discovery will be available for a tenant facing eviction in an unlawful detainer proceeding.[6]

Plaintiffs note that rule 34 allows the Court to reduce the time for discovery, but plaintiffs argue that this is discretionary. Minn.R.Civ.P. 34.02. A discretionary change in the discovery schedule, plaintiffs argue, is inadequate because a PHA *must* guarantee a tenant access to all documents before eviction proceedings begin according to HUD's due process guidelines and the statute. Further, HUD has conceded in its memorandum and at oral argument that discovery must be available without discretion. *See* Secretary Kemp's Mem. in Opp. to Summary Judgment at 9 n. 3. Plaintiffs conclude that rule 34 fails to provide a guarantee of complete discovery for all tenants facing court eviction proceedings.

Defendants admit that rule 34 has a presumptive timeline of thirty days for responding to discovery requests. Defendants argue, however, that the time to respond can be shortened by leave of the court. Defendants claim that courts will make discovery available as justice requires, so tenants will be afforded adequate due process protection.

■ The Court finds that rule 34 does not provide adequate due process guarantees to tenants facing eviction who need to discover PHA documents and records. It is clear that before trial discovery *must* be available to all tenants who face eviction. Indeed, the Secretary has denied waivers to other states where HUD's investigation revealed that the availability of discovery was dependent on discretionary action of the court. Secretary Kemp's Mem. in Opp. to Summary Judgment at 9 n. 3. Therefore, the Court concludes that rule 34 provides an inadequate guarantee of complete discovery and that the Secretary's conclusion to the contrary was arbitrary and capricious and cannot stand.

### B. Discovery with a Subpoena Duces Tecum

■ Defendant HUD argues that even if rule 34 does not provide timely discovery, a tenant can discover material through use of a subpoena duces tecum. The Secretary contends that under Minn.R.Civ.P. 45.01(b) a party can obtain a subpoena for production after giving proof of serving a notice of deposition under Minn.R.Civ.P. 30. Then, according to the Secretary, under Minn.R.Civ.P. 45.04(b), compliance with the subpoena would be required.[7] Thus, the Secretary claims that a party would be able to obtain discovery, within the seven-day period, before an unlawful detainer action could commence.

The Secretary argues that the thirty-day response for discovery inherent in rule 34 does not apply to discovery requests made under rule 30. The Secretary bases this argument on a change made in rule 30.02(e) by the Supreme Court in 1988. The former language of rule 30.02(e) stated:

> The notice [of a deposition] to a party deponent may include or be accompanied by a request made in compliance with Rule 34 for the production of documents

---

return day by leaving a copy at the person's last usual place of abode with a family member or a person of suitable age ... or if the person had no place of abode, by leaving a copy upon the premises.... If the defendant or the defendant's attorney does not appear in court upon the return day in the action, the trial thereof shall proceed.

6. Plaintiffs cite *Port Authority of City of St. Paul v. Blair Arcade Limited Partnership,* No. C7–89–878, 1989 WL 131580 (Minn.Ct.App.1989) for the proposition that discovery is not available in unlawful detainer proceedings. This is an unpublished opinion and defendants argue that it should not be considered pursuant to Minn.Stat. § 480A.08, subd. 3 (1988), which regulates the precedential effect of unpublished opinions. The Court declines to decide the effect of *Port Authority* in the instant action because an adequate basis exists to decide this case without resolving this particular issue.

7. Minn.Rule Civ.P. 45.04(b) provides:

The person to whom the subpoena is directed may, within 10 days after service thereof or on or before the time specified in the subpoena for compliance if such time is less than 10 days after service, serve upon the attorney designated in the subpoena written objection to the production, inspection or copying of any or all of the designated materials.

and tangible things at the taking of a deposition. The procedure of Rule 34 shall apply to the request.

Minn.R.Civ.P. 30.02(5) (1976). The amended rule states:

The notice [of a deposition] to a party deponent may include or be accompanied by a request made in compliance with Rule 34 for the production of documents and tangible things at the taking of a deposition.

Minn.R.Civ.P. 30.02(e) (1990). The operative change, according to the Secretary, is that the last line of the former rule was dropped by the Supreme Court. The Secretary infers from this change that the Supreme Court no longer intended rule 34 to control the timeline for discovery in a rule 30 subpoena.

Plaintiffs respond that the change in rule 30.02(e) was not intended to have legal significance. Plaintiffs suggest that the only purpose of the change was to eliminate redundant language in the former rule. Plaintiffs point out that the rule still states "accompanied by a request made in compliance with Rule 34...." *Id.* Plaintiffs also cite commentators on the Minnesota Rules who believe the change was not substantive.

Rule 30.02(e) was amended to delete the second sentence of the former rule. That sentence stated: "The procedure of Rule 34 shall apply to the request." The deletion of this sentence was made without specific comment by the Supreme Court, and it is probably not intended to change the interpretation of the rule. The rule is probably just clarified.

2 D.Herr & R.Haydock, *Minnesota Practice*, § 30.12 at 26 (Supp.1990). Plaintiffs conclude that rule 34 still governs the timing of discovery, and therefore, tenants' access to documents is dependent on the discretion of the Court.

The Court finds that the change in rule 30.02(e) was not intended to be substantive.

The Court finds no evidence that the Supreme Court intended to radically alter the structure of discovery under rule 30. A plain reading of the rule indicates that the Supreme Court was merely trying to eliminate redundant language. The rule continues to state that rule 34 should apply. So it is reasonable to conclude that the elimination of the last sentence in rule 34 was merely designed to clean up redundant language. Accordingly, the Court finds that tenants facing court-ordered eviction would not receive due process because discovery could take longer than the seven-day period before an unlawful detainer action commences.[8]

II. *Notice to Tenants of Change in MPHA Eviction Process*

Plaintiffs argue that MPHA has failed to give tenants notice of the change in the eviction process. The Court declines to address this issue, because it has determined that MPHA must allow tenants an administrative hearing before an unlawful detainer action can commence.

Therefore, the Court will grant plaintiffs' motion for summary judgment.

Based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. plaintiffs' motion for summary judgment is granted;

2. defendant Kemp's motion for summary judgment is denied;

3. defendant McCorvey and MPHA's motion for summary judgment is denied;

4. defendant Kemp's determination that the Minnesota unlawful detainer procedure meets the elements of due process set out in the regulations is hereby set aside; and

5. defendants McCorvey and MPHA are hereby enjoined from initiating evictions of public housing tenants without first offer-

---

**8.** Defendant MPHA claims that it is willing to voluntarily open its files to all tenants facing eviction. Therefore, MPHA argues that all documents will be available, thereby affording due process to tenants facing eviction. The Court finds this to be inadequate because MPHA could change its policy and leave tenants without redress. As defendant HUD has admitted, tenants must always be able to gain access to documents and records for use in their eviction proceedings.

ing the opportunity for a grievance hearing to all tenants so affected.

LET JUDGMENT BE ENTERED ACCORDINGLY.